IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ARTHUR CHESTER MORGAN<br><br>Defendant. | Case No. 1:20-mj-174 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jesse Adams, Special Agent, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. As a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), I am authorized pursuant to Title 18, United States Code, Section 3051 to execute search warrants and enforce any of the criminal, seizure, or forfeiture provisions of the laws of the United States. Additionally, I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2. I have been a Special Agent with the ATF since April 2018. I am currently assigned to the Washington Field Division's Falls Church Group II. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and armed narcotics trafficking. Prior to my appointment with the ATF, I was

a sworn law enforcement officer with the United States Marshals Service for over four years, and a sworn law enforcement officer with the Commonwealth of Virginia for over seven years.

3. As an ATF agent, I have participated in investigations which resulted in the arrests, searches, and seizures of individuals and property. I have participated in the use of cooperating informants, pen register/trap and trace devices, video surveillance, GPS tracking devices, search warrants, and audio surveillance, among other law enforcement techniques. Additionally, I have participated in numerous controlled buys of firearms and narcotics from targets of law enforcement investigations. I have also been involved in proactive and reactive cases. Based on my training and experience, I am familiar with the methods used in furtherance of a variety of criminal activities.

4. This affidavit, which is based upon personal knowledge, information provided by other law enforcement personnel, and evidence obtained during this investigation, is submitted in support of an application for a criminal complaint and arrest warrant charging **ARTHUR CHESTER MORGAN** with possession of a firearm by a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1). This affidavit does not include all of the facts known to me regarding this investigation, only those sufficient to establish probable cause that federal laws have been violated.

## PROBABLE CAUSE

5. In December 2019, General Services Administration Office of Inspector General ("GSA-OIG") special agents obtained an arrest warrant for **ARTHUR CHESTER MORGAN** for a violation of Title 18, United States Code, Section 1343 (Wire Fraud) based on a multi-agency investigation into **MORGAN** and **MORGAN**'s company, Surveillance Equipment Group, Inc. ATF became involved in this investigation in November 2018, when it was discovered that

**MORGAN** purchased several unregistered machinegun conversion kits from a specific Federal Firearms Licensee/Special Occupational Taxpayer ("SOT") out-of-state manufacturer. A determination was made regarding these conversion kits that resulted in them being considered "combination[s] of parts designed and intended for use in converting a semiautomatic weapon into a machinegun," which are machineguns, as defined in Title 26, United States Code, Section 5845(b). **MORGAN** is a convicted felon and therefore prohibited from owning firearms.

6. On December 17, 2019, federal law enforcement agencies executed four federal search warrants at addresses associated with **MORGAN**. **MORGAN** was arrested the same day at his residence in Lorton, Virginia, which is within the Eastern District of Virginia, and the location of one of the four search warrants. Another search warrant was executed at a property associated with **MORGAN** in Louisa, Virginia, and two at storage units.

7. Upon his arrest, **MORGAN** was advised of his Miranda rights and placed into a vehicle by GSA-OIG special agents and witnessed by another federal agent. The agents conducted a recorded interview with **MORGAN** after he waived his rights and agreed to speak with agents. As it pertains to firearms, **MORGAN** initially told a GSA-OIG special agent that there were no weapons in his residence. An ATF Special Agent was present and after that initial conversation had ended, he approached **MORGAN**. The agent identified himself as with the ATF, advised that he was there to discuss firearms-related issues and ultimately asked again whether there were any firearms in the residence. **MORGAN** advised that there were two handguns and a shotgun in the office. **MORGAN** also stated there was a revolver in the master bedroom closet that belonged to his wife, S.M. Upon having been questioned about his criminal status and restriction from possessing firearms, **MORGAN** later stated that the firearms were not his, that they were in the house, but he had not used them for any crime. In reference to the Glock machinegun conversion

kits, **MORGAN** claimed that he did not know they were regulated parts, but admitted that he had purchased them in the past. He stated that he no longer possessed the conversion kits and that he had shipped them to a personal friend in Poland.

8. A search of the residence revealed four firearms, multiple firearm-related items and narcotic evidence, as well as body armor and other evidence that was seized by federal agents. Evidence located in an upstairs room identified as **MORGAN**'s office included one black Kolpin long gun bag, which contained: one Franchi Model SPAS 12 Shotgun, SN: AA18706; 15 less-lethal shotgun shells from MK Ballistic Systems; and 45 shotgun shells, birdshot and slug. Also in the office was one red Blackhawk bag, which contained: five targets; five holsters; two gun cleaning kits; two gun locks; a pair of protective glasses; a pair of glasses; a green and black pistol case; hearing protection; two belt straps with attachment tools; two markers; one firearm bench rest; one pistol hand grip; one grey handgun case containing a dual magazine pouch and two magazines for a Smith & Wesson firearm; one Smith & Wesson, Model 469, 9mm handgun, SN: TBT7270; 24 rounds of Federal 9mm ammunition from the magazines; one black and grey handgun case containing a dual magazine pouch and two magazines an Imez firearm; one Imez, Model IJ70-17AH, .380 caliber handgun, SN: RU05676; 22 rounds of Remington .380 caliber ammunition from the magazines; and 187 rounds of ammunition including 50 rounds of Winchester 17 HMR, 87 rounds of American Eagle .380 caliber, and 50 rounds of American Eagle 9mm.

9. Also located in the office were: one thermos which contained 7 grams of suspected marijuana; one red case containing two lighters, two smoking devices, a grinder, and a white pill container and several metal picks/scrappers/brushes; approximately one gram of suspected marijuana from within the above pill bottle; one black bag containing two smoking devices, plastic

baggies, rolling papers, a spoon with residue, a black smoker's kit/holder, a plastic pipe, a tea diffuser and a crown royal bag.

10. Located within the master bedroom closet was: one green and black handgun case containing a dual speed loader pouch and two speed loaders for a revolver; one Smith & Wesson .38 Caliber revolver, SN: J125298; and 10 rounds of .38 caliber ammunition from the speed loaders.

11. Later on December 17, 2019, special agents, including one from the ATF, traveled to S.M.'s place of employment in Arlington, Virginia. Special agents met with S.M. where she escorted agents to a more private seating area in the building to speak. Special agents advised S.M. of **MORGAN**'s arrest and the execution of the search warrant at her residence. Special agents advised S.M. that she was not required to speak with agents, that she was not in trouble, and that she was not under arrest. A special agent then advised S.M. of her Miranda rights, which she acknowledged and she then agreed to speak with agents.

12. S.M. advised that she did not know anything about **MORGAN**'s business and confirmed the second bedroom (home office) as the space he utilized for his business. She advised that **MORGAN** had only been using the home office for his business for approximately one year. S.M. stated that she did not use the office and the only time she would go in there was to print something from time to time.

13. S.M. was advised that several firearms were recovered from the home. S.M. said that she was aware of **MORGAN**'s criminal history from "many years ago," at which point, agents confirmed to her that **MORGAN** was a convicted felon. S.M. said that she had a firearm for protection in the bedroom. S.M. said that she did not know that there were three firearms in the office. She said that **MORGAN** was supposed to put them in storage several years ago. S.M.

stated to agents that she is not a gun person. S.M. also stated that she did not buy the firearms and that the one in the bedroom was provided to her by **MORGAN** 2-3 years prior. S.M. stated that she has not seen **MORGAN** use the firearms that were recovered and that she was not aware of how **MORGAN** came into possession of the firearms.

14. S.M. further advised that she went to Sharp Shooters range in Springfield, Virginia with **MORGAN** and shot one firearm with him. She advised that he taught her how to hold it, and said it was a smaller gun. She recalled that both of them signed paperwork at the shooting range. She stated that this trip to the range was approximately six years prior.

15. Special agents concluded the interview and left S.M.'s location, but she returned to the residence in Lorton, Virginia, as the execution of the search warrant was concluding.

16. Special agents interviewed S.M. and P.C. in the parking area of the residence. S.M. stated that she and **MORGAN** were the only residents of that home. S.M. further stated that the marijuana located in the office was not hers and that she did not smoke marijuana because she was in the medical profession and gets random drug testing.

17. On January 17, 2020, federal agents conducted an interview of one of **MORGAN**'s colleagues, "J.C." During the interview, J.C. advised that he and **MORGAN** had gone to a shooting range five or six years prior, to shoot guns. J.C. did not remember if the firearms were **MORGAN**'s, but believed that he shot a pistol and **MORGAN** shot what J.C. believed was a shotgun. J.C. believed the range was located near the location of the interview, which was in Reston, Virginia. Based on the respective locations of the range he seemed to refer to and the Sharp Shooters range that S.M. referred to, law enforcement believes these to have been two different ranges.

18. All of the recovered firearms were examined and determined to be "firearm(s)" as defined in Title 18, United States Code, Section 921(a)(3). Additionally, it was determined that the firearms were not manufactured in the Commonwealth of Virginia and, therefore, the firearms traveled in, and/or affected interstate commerce.

19. A review of Prince George's County, Maryland, Circuit Court certified conviction documents shows that **MORGAN** was convicted on June 1, 1982 of Second Degree Murder, Assault with the Intent to Murder, Rape or Rob, and Use of Handgun in a Crime of Violence. The original sentence was to 15 years' imprisonment, and he served at least a period of years. Requests from both the Commonwealth of Virginia and the State of Maryland show there are no pardon/clemency records for **MORGAN**. Additionally, **MORGAN** was convicted of misdemeanor obstruction of justice on May 12, 2010, which stemmed from an instance of attempting to purchase a firearm on November 22, 2008, after providing false information on a criminal history consent form in Virginia.

## CONCLUSION

20. Based on all of the foregoing, I submit that there is probable cause to conclude that on or about December 17, 2019, **ARTHUR CHESTER MORGAN**, after having been convicted of a crime punishable by imprisonment for a term exceeding one year and knowing he had been so convicted, did possess a firearm within the Eastern District of Virginia in violation of Title 18, United States Code, Section 922(g)(1).

21. In consideration of the foregoing, I respectfully request that this Court issue a criminal complaint and arrest warrant for **ARTHUR CHESTER MORGAN**.

_____
Jesse A. Adams
ATF Special Agent

Respectfully submitted and attested to in
accordance with the requirements of
Fed. R. Crim. P. 4.1 via telephone
On June 26, 2020:

_____
Hon. Theresa Carroll Buchanan
United States Magistrate Judge
Eastern District of Virginia